**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ALICE PEAK, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1912 (JGP) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant District of Columbia, by counsel, respectfully moves for summary

judgment, pursuant to Fed. R. Civ. Pro. 56 and LCvR 56.1.  The challenged

administrative Hearing Officer's Decision ("HOD") was based on the evidence

presented, and was correct in its conclusions.

A memorandum of points and authorities, a statement of material facts as to

which there ares no genuine issues in dispute, and a proposed order are attached hereto.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

2

**/s/ Carol E. Burroughs**
CAROL E. BURROUGHS [#415432]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6520
**June 26, 2006**                          Email:  Carol.Burroughs@dc.gov

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| ALICE PEAK, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1912 (JGP) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Alice Peak, guardian of M.P., brought this case under the Individuals

with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, *et. seq.* The issues before

the Court are whether the hearing officer erred in finding, based on the evidence

presented at a due process hearing, 1) that DCPS had developed an appropriate IEP for

M.P. and had implemented it, and 2) that DCPS' efforts to determine an appropriate

placement had been obstructed by plaintiff's counsel.

Under the IDEA, disabled students are entitled to a free, appropriate education

("FAPE"). *See* IDEA, 20 U.S.C. § 1412(a)(1). An individualized education program

("IEP") team, consisting of the disabled student's parents, teachers, and other education

specialists, meet and confer in a collaborative process to determine how best to

accommodate the needs of the student to provide a FAPE. *See* 20 U.S.C. §

1414(d)(1)(B). The IEP is a written statement from the meeting that includes, among

3

other things, goals and instructional objectives, services to be provided, projections

regarding the dates when such services will be offered, and criteria for evaluating

whether instructional objectives are being met.  *See* 20 U.S.C. § 1414(d)(1)(A); *see also*

20 U.S.C.S. § 1401(11).[1]  Though the IDEA mandates that school districts consider input

from the parent, it does not required that the parent be the final arbiter of what services

are appropriate or that the parent's opinion should carry more weight than the other

participants.  See 20 U.S.C. § 1414(d) and (f).[2]

        If the parents do not agree with the decisions of the IEP team, they can request a

due process hearing before an impartial hearing officer.  *See* 20 U.S.C. § 1415(f).  The

hearing officer's decision is final and reviewable by federal or local courts.  *See* 20

U.S.C. § 1415(i).

## STANDARD OF REVIEW

### I.    Summary Judgment

        Under Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to

summary judgment if "there is no genuine issue of material fact and the moving party is

entitled to judgment as a matter of law."  See *Celotex Corp. v. Catrett*, 477 U.S. 317,

3223 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Although a court should

draw all reasonable inferences from the records submitted by the nonmoving party, the

mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.

See *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  To be genuine, the issue

---

[1]  20 U.S.C.S § 1401(11):  "The term 'individualized education program' or 'IEP' means
a written statement for each child with a disability that is developed, reviewed, and
revised in accordance with section 614(d) [20 USCS § 1414(d)].

must be supported by evidence sufficiently admissible that a reasonable trier of fact could

find for the nonmoving party; to be material, the factual assertion must be capable of

affecting the substantive outcome of the litigation.  See Id.; see also *Laningham v. U.S.*

*Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

      In cases such as this, the IDEA dictates that "the court [ ] shall receive the records of

the administrative proceedings; [ ] shall hear additional evidence at the request of a party;

and [ ] basing its decision on the preponderance of the evidence, shall grant such relief as the

court determines appropriate." 20 U.S.C. §1415(i)(2)(B).  When neither party has requested

the court to hear additional evidence, the "motion for summary judgment is simply the

procedural vehicle for asking the judge to decide the case on the basis of the administrative

record." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1052 (7th Cir. 1997).  Factual

determinations of the hearing officer are to be accorded due weight.

## II.  Review of Administrative Decisions under IDEA.

      The IDEA provides for judicial review in state or federal court for "[a]ny party

aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C.

§1415(i)(2)(A).  In conducting such review, the "preponderance of the evidence" standard

of 20 U.S.C. §1415(i)(2)(B)(iii) "is by no means an invitation to the court to substitute their

own notions of sound educational policy for those of the school authorities which they

review." *Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176,

206 (1982).  Stated differently, the court should not "reverse the hearing officer's findings

simply because [the court] disagree[s] with them." *Board of Educ. of Arlington Heights*

---

[2]  20 USCS § 1414(f):  "Each local educational agency or state educational agency shall ensure that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child."

*Sch. Dist. No. 25 v. Illinois State Board of Educ.*, 2001 U.S. Dist. LEXIS 6994, *12 (N.D. Ill., March 19, 2001).

The party challenging the hearing officer's determination bears the burden of persuading the court that the hearing officer was incorrect. *Angevine v. Smith*, 959 F.2d 292, 295 (D.C.Cir. 1992); *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988); *Lyons v. Smith*, 829 F. Supp. 414, 417 (D.D.Cir. 1993). While the Court is authorized to make an independent determination, "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Lyons*, 829 F. Supp. at 418. This deference results from Congress' recognition of the "specialized knowledge and experience" required to make complicated educational choices. *Rowley*, 458 U.S. at 207-08.

Accordingly, this Court must give the hearing officer's determinations "due weight," and Plaintiff, in order to prevail, must show by a "preponderance of the evidence" that the hearing officer was wrong. Because the HOD was appropriate in all respects challenged by Plaintiff (or favored them more than required by facts or law), Plaintiff cannot make the required showing, and summary judgment should be granted to Defendant.

## FACTUAL BACKGROUND

Plaintiff Alice Peak's minor child, M.P., is a nine year old male student attending Malcolm X Elementary School. R. at 3

In July, 2004, M.P. had a Psycho-educational Evaluation, a Speech and Language Evaluation, and a Social History. R at 14 On August 12, 2004, an MDT team met and determined that M.P. was eligible for special education services as a student with the disability classification of a learning disability (LD). R. at 3, 34 M.P.'s guardian, Alice

Peak, participated in the meeting and signed the IEP indicating that she agreed with its

contents.  R. at 35.

On January 25, 2005, DCPS convened an MDT meeting to review and revise, if

necessary, M.P.'s IEP.[3]  The IEP provided for 15 hours of specialized instruction and one

hour of speech therapy.  Plaintiff grandmother/guardian participated in the MDT meeting

and signed the IEP indicating that she agreed with the contents of the IEP. R. at 57. The

MDT Meeting Notes report that plaintiff stated that she saw "overall improvement in

[M.P]'s school performance."  The Notes also indicate that M.P.'s special education

teacher, speech pathologist and general education teacher all reported some improvement

in his academic performance and behavior.  R. at 4, MP 52

Ms. Gregory, the special education coordinator, testified that his Stanford Nine

test scores showed a level of improvement.  She also stated that plaintiff lived across the

street from the school, visited the school often, and had not indicated to her that M.P. was

having any problems.  R. at 96.

Upon receiving a letter from plaintiff's counsel indicating that the grandmother

wanted to have a meeting, Ms. Gregory, sent on June 10, 2005, a Letter of Invitation to

an MDT Meeting to plaintiff and counsel (Carolyn Houck) suggesting three possible

meeting dates.   The letter to Ms. Houck was faxed to her office along with another letter

to Ms. Houck indicating that plaintiff had stated that she was available on June 20 2005

at 9:30 a.m.  The letter stated that if she did not hear from Ms. Houck by June 15, 2005,

she would confirm her attendance for June 20, 2005 at 9:30 a.m.  She received a fax

confirmation sheet that both letter had been successfully transmitted.    Ms. Gregory also

---

[3]   I.E.P.s need not be revised for a period of one year unless both DCPS and the parent agree otherwise  20
U.S.C.  1414(a )(2)(B)(i).

called the lawyer's office on June 10th leaving a message regarding the scheduling of an

MDT meeting to discuss concerns. (DCPS-2, R at 4, 96-100)

On June 20, 2005 at 9:30 a.m., the plaintiff appeared for the MDT meeting and

the MDT team was there and ready to convene the meeting.  Counsel for plaintiff,

however, did not appear.  Ms. Gregory received a call from Houck's office while

everyone else was there waiting for her to arrive.  The person stated that Ms. Houck was

not participating in the meeting and did not want it to go forward.  The person did not

state why.  Ms. Gregory testified that she had a clear recollection of the conversation

especially because it was not pleasant.  R at 101.  Ms. Houck could not recall either the

phone call or what happened on June 20, 2005.  Ms. Houck also testified that she had no

record of receiving the Letter of invitation or cover letter from Ms. Gregory. R. at 136

She also testified that she did not contact Malcolm X to set up a meeting to discuss her

concerns regarding the student before filing the hearing request.  R.at. 139-142t

A due process hearing was held on August 23, 2005.  In a Hearing Officer's

Determination ("HOD") issued on August 30, 2005, Hearing Officer DuBow denied

Plaintiff Counsel's request for relief and dismissed the case.  Officer DuBow found that

Plaintiff's Counsel frustrated the process "through non-responsiveness and non-

cooperation."  HOD, R. at 5-6.

On November 7, 2005, an MDT meeting was held, but Plaintiff Alice Peak was

not present.  Special education advocate Sharon Millis was present acting for the

guardian.  The team recommended clinical, occupational, and functional behavior

assessments.  The clinical assessment should include an ADHD assessment.  The team

also recommended the addition of psychosocial counseling.  Ex. 1-2.

On December 1, 2005, DCPS conducted a Clinical Evaluation of M.P. Ex. 3. DCPS conducted an Occupational Therapy Evaluation of M.P on December 21, 2005. Ex. 4. The evaluation indicated that occupational therapy was not needed.

On December 22, 2005, a Resolution Meeting was held with Plaintiff Alice Peak A clinical evaluation had been completed and the report received.  An occupational therapy evaluation was completed and the report was due on January 6, 2006.  Ex. 4.  The parties agreed to a meeting once the evaluations were received and prior to January 25, 2006.  The projected schedule date was January 16, 2006.  Ex. 5

On January 4, 2006, DCPS conducted a Functional Behavioral Assessment on M.P.  Ex. 6.   DCPS conducted an Educational Evaluation of M.P on January 13, 2006. Ex. 7.

An MDT/IEP meeting was held on January 17, 2005.  The evaluations were reviewed.  After reviewing placement options to achieve the goals of the IEP, DCPS issued a notice of proposed placement at the Molten Center on the same date. Ex. 9-10.

## ARGUMENT

I.      **The Transcript of the Hearing and the Hearing Officer's Findings of Fact are Supported by the Record and Confirm That He Had Concluded That the IEP was Appropriate and Therefore There was no Denial of FAPE**

The issues presented by plaintiff at the August 23, 2005 hearing were 1) DCPS' failure to perform all necessary evaluations, 2) DCPS' failure to develop an appropriate I.E.P. and 3) DCPS' failure to make an appropriate placement.   R. at 7.

Plaintiff's exhibits, including a Psycho-educational Evaluation, dated July 12, 2004; a Speech and Language Evaluation, dated July 14, 2004, a Social History, dated July  26, 2004 and IEP and MDT meeting notes, dated August 12, 2004 and

IEP Report Cards dated August 12, 2004 and January 25, 2004 were admitted into the record. R. at 17-68.  Defendants' exhibits—a June 10, 2004 Letter of Invitation and a Letter to Mr. Hull from Taiya Gregory of the same date—were also admitted without objection.  (R at 77-80).

Taiya Gregory, Special Education Coordinator, testified regarding the MDT/IEP meeting that was held January 25, 2005.  The meeting was held at Malcolm X School, an IEP was developed for the student that provided for 15 hours of specialized instruction and one hour of speech therapy. HOD at 2; R at 3 No additional evaluations were recommended by the team.    The parent, the special education teacher and his general education teacher felt that there was "overall improvement in M's school performance."   Ms. Gregory stated that "his SAT-9 scores were pretty remarkable."  R. at 93.  All present at the IEP meeting agreed that his behavior was improving.  R. at 3, 4, 96.  The grandmother participated in the MDT meeting and signed that she agreed with the contents of the IEP.  HOD at 2; R at 3)  Ms. Gregory further testified that the parent lived across the street and had never expressed any concerns to her about M.P.  R. at 4, 96.  She was first aware of concerns through a contact from her attorney (Ms. Houck) that the grandmother wanted to have a meeting. R at 97.

## II.    The Claims for New Evaluations and IEP are Moot.

In the complaint, the relief requested was "placement at Rock Creek Academy, to fund independent clinical, occupational therapy, speech and language and social history evaluations of M.P. to develop an appropriate IEP for M.P. and to provide M.P. with compensatory education for several year's worth of deficiencies in his specialized

education instruction."  Complaint at 4-5.  However, events since the filing of this action

have rendered the evaluations and I.E.P. development moot.

On November 7, 2005, an MDT meeting was held, but Plaintiff Alice Peak was

not present.  Special education advocate Sharon Millis, was present acting for the

guardian.  The team recommended clinical, occupational, and functional behavior

assessments.  The clinical assessment was to include an ADHD assessment.  The team

also recommended the addition of psychosocial counseling.  Ex. 1-2.

On December 1, 2005, DCPS conducted a Clinical Evaluation of M.P, and on

December 21, 2005, conducted an Occupational Therapy Evaluation.  Ex. 3-4.  On

January 4, 2006, DCPS conducted a Functional Behavioral Assessment on M.P., and an

Educational Evaluation was conducted on January 13, 2006.  Ex. 6-7.

M.P.'s MDT/IEP Team met on January 17, 2006, considered reports on all such

evaluations, and based on those and other data, prepared a new IEP, and issued and notice

of proposed placement at the Moten Center. Ex. 8-10.

In light of the events described above, there is nothing remaining  for the Court to

consider in this action.

According to the Supreme Court:

> Article III of the Constitution limits federal "judicial power,"
> that is, federal-court jurisdiction, to "Cases" and "Controversies."
> This case-or-controversy limitation serves "two complementary"
> purposes. *Flast v. Cohen*, 392 U.S. 83, 95 (1968)  It limits the
> business of federal courts to "questions presented in an adversary
> context and in a form historically viewed as capable of resolution
> through the judicial process," and it defines the "role assigned to
> the judiciary in a tripartite allocation of power to assure that the
> federal courts will not intrude into areas committed to the other
> branches of government."  IBID.  Likewise, mootness has two
> aspects: "when the issues presented are no longer "live" or the

parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969)

*United States Parole Commission v. Geraghty*, 445 U.S. 388, 395-396 (1980).  Further, in

*United States of America v. Weston*, 194 F.3d 145, 147-148 (D.C. Cir. 1999), the District

of Columbia Circuit Court stated that:

> "[A] federal court has neither the power to render advisory
> Opinions nor to decide questions that cannot affect the rights
> Of litigants in the case before them.'" *Preiser v. Newkirk*,
> 422 U.S. 395, 401 (1975) (citation omitted).  "For that reason,
> **If [] events occur while a case is pending on appeal that make []**
> **it impossible for the court to grant 'any effectual relief whatever'**
> **to a prevailing part, the appeal must be dismissed [as moot]."**
> *Church of Scientology of California v. United States,* 506 U.S. 9,
> 12, (1992) [Emphasis added.]

That is exactly what has occurred here.  Events have transpired such that a case or

controversy no longer exists between Plaintiff and Defendant with respect to the conduct

of requested evaluations and revision of M.P.'s IEP.  Accordingly, these claims must be

dismissed.

III.     The Hearing Officer Properly Found that Plaintiff's Counsel Frustrated DCPS'
         Efforts to Hold the MDT Meeting the Grandparent Requested, and Instead
         Concentrated on Litigation in the Pursuit of Attorneys' Fees.

The complaint asserts that DCPS failed to propose a proper placement for

M.P. when in fact it was Plaintiff's counsel who frustrated DCPS' efforts by failing to

attend, and by instructing her client not to participate in, an MDT meeting called to

address the grandparent's concerns.   The record fully supports this conclusion.    DCPS

witness Taiya Gregory testified that she made several phone calls and then faxed a letter

of invitation to an MDT meeting to Ms. Houck suggesting several dates.  Ms. Gregory

stated that she had talked with M.P.'s grandmother and she was available June 20 at 9:30

a.m. Ms. Gregory further indicated that if she had not heard from Ms. Houck by June 15,

she would confirm the June 20th date.  Ms. Gregory did not hear from the attorney's office. R. at 4, 97.

As the grandmother was arriving for the 9:30 a.m. meeting on June 20, Gregory received a phone call from the attorney's office telling the grandmother not to participate in the meeting.  R. at 4, 100. Ms. Gregory was told that "she was not participating and we didn't confirm any meeting with you." R at 103.  The caller from the attorney's office gave no reason why she would not be attending. R. at 104.  Ms. Gregory had a very clear recollection of the conversation because it was unpleasant.  R. at 4, 101.  In contrast, Ms. Houck could not recall the conversation or the events of June 20, 2005. Ms. Houck also testified that she had no record of receiving the faxed letter.  R at 5; 236.  DCPS produced the faxed confirmation showing that it went though.  R. at 5, 77-80.

Based on this evidence, the hearing officer found that DCPS' had made efforts to convene the MDT Meeting that was requested by the grandparent but that counsel for the grandparent "frustrated that process through non-responsiveness and non-cooperation."  The hearing officer further found that the facts of this case were similar to those in Lesesne v. District of Columbia. (04-0620, (D.D.C. July 26, 2005) aff'd Lesesne v. District of Columbia., No. 05-7123, (D.D.C. May 19, 2006). where Judge Kollar-Kotelly found that counsel had actively avoided an MDT meeting and held out for a due process hearing to get attorneys fees.

## IV.    The record as a whole shows that there was no denial of FAPE; thus Plaintiff's claim for compensatory education must fail.

As a threshold matter, the Court must find that there was a denial of FAPE before it can consider whether compensatory damages are warranted.  Reid v. District of Columbia, 401 F.3d 516 (D.C. Cir. 2004).

Although the hearing officer overlooked explicitly stating in his decision that there had been no denial of FAPE, it is clear from his findings of fact which are supported by the record that FAPE had not been denied.

### CONCLUSION

This honorable Court should grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General of the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

**/s/ Carol E. Burroughs**
CAROL E. BURROUGHS [#415432]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6520
Email: Carol.Burroughs@dc.gov

**June 26, 2006**