UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ALICE PEAK, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 05-1912 (JGP) |
|  | ) | |
| DISTRICT OF COLUMBIA, | ) | |
|  | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

The Defendant, by counsel, opposes herewith the Plaintiff's Motion for Summary Judgment, filed herein June 27, 2006 ("Motion"). A statement of material facts in dispute is appended hereto. Defendants request that their Motion for Summary Judgment be incorporated herein as if fully set forth. In addition, defendants ask the court to consider the following arguments:

**PRELIMINARY STATEMENT**

Plaintiff no longer seeks school placement in this case and is not invoking the stay put provision. PMSJ at 1, ¶1. Conceding that all of the requested evaluations have been done, plaintiff also no longer seeks independent evaluations. PMSJ at 1, ¶ 2.

However, plaintiff continues to assert a claim for compensatory education. PMSJ at 1, ¶ 3. Finding against the plaintiff on both the educational evaluation and placement claims, the Hearing Officer did not reach the issue of compensatory education because he found no denial of FAPE. . *Reid v.*

*District of Columbia*, 401 F.3d 516 (D.C. Cir. 2004).

Moreover, there is nothing in the record below upon which this court could base a compensatory education award. Although plaintiff demanded compensatory education in the Due Process Request, no evidence was presented at the hearing that would support plaintiff's contention that Michael Peak should have been classified as emotionally disturbed before his most recent IEP. Ultimately, the plaintiff here asks the Court to disagree with the Hearing Officer's conclusions, based largely on evidence that could have been, but was not, presented to the Hearing Officer.

## ARGUMENT

### I. DCPS Conducted Appropriate, Timely Evaluations of M.P., and Developed and Implemented Appropriate I.E.P.'s for him.

In cases under the IDEA, a district court "shall review the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). While the IDEA requires district courts to make their own independent determination based on a preponderance of the evidence, courts should not substitute "their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). The Act's requirement that a reviewing court "receive the records of the administrative proceeding" requires courts to give "due weight" to the hearing officer's determinations, *id.*, and to "afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." *Lyons v. McKenzie*, 862 F2d 884, 887 (D.C.

Cir. 1988). The party challenging the administrative decision bears the burden of persuading the court that a different result should have been reached. *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). If neither party requests that the court hear additional evidence, then the court may determine the case based on the administrative record on summary judgment. *Heather S.. v. Wisconsin*, 125 F.3d 1045,1052 (7th Cir. 1997). Here, neither party requested that the Court hear additional evidence; thus, the Court should base its decision on a review of the administrative record.

> A. **Plaintiff failed to put on any evidence at the due process hearing regarding the need for evaluations prior to those conducted in July 2004**.

The 2002-2003 Report Card and Teacher Comments, Plaintiff's Exhibit 3, upon which plaintiff bases her claim that M.P.'s initial evaluation was untimely, could have been but was not offered in evidence for consideration by the hearing officer.[1] Nor was any other evidence presented on the timeliness of the initial evaluation.

Moreover, even if it had been, the "sudden and disruptive conduct" and "continued downhill slide" reported in April and June, Plaintiff's Exhibit 3, do not fit the classification requirements for emotional disturbance. As defined in the regulations,

> Emotional disturbance is "[a] condition exhibiting one or more of the following conditions **over a long period of time and to a marked degree** that adversely affects a child's educational performance:
>
> 1. An inability to learn that cannot be explained by intellectual, sensory or health factors;
> 2. An inability to build or maintain satisfactory interpersonal relationships with peers and teachers;

---

[1] Plaintiff did not earlier ask the court to consider additional evidence beyond the administrative record, yet attaches exhibits 3, 7, 8—all of which could have been presented to the Hearing Officer but were not (Exhibit 3)--- and multiple exhibits which post-date the hearing officer's determination. Defendant Exhibits 1-2, 4-6, 9-14.

3. Inappropriate types of behavior or feelings under normal circumstances..
4. A general pervasive mood of unhappiness or depression; or
5. A tendency to develop physical symptoms or fears associated with personal or or school problems. (emphasis added)

34 CFR 300.7(b)(4).

It is generally accepted that a "long period of time" is at least a year. Many children experience emotional difficulties arising out of family events that do not rise to the level of emotional disturbance.

### B. The Court should not consider post-hearing evidence which have never been presented to a hearing officer.

Plaintiff submits the November 2005 MDT meeting notes where, for the first time, an Occupational Therapy Evaluation was recommended.[2] The fact that another MDT/IEP team recommended at a later time, another type of evaluation shows nothing about the adequacy of the July 2004 evaluations upon which M.P.'s first I.E.P. was developed in January, 2005.

Moreover, because district courts are counseled against "imposing their view of preferable educational methods upon the States," *Rowley* at 206-07, a hearing officer should first have the opportunity to address the issues or the court will be denied the benefit of lend his/her expertise. *See Goldstrom v. Dist. of Columbia*, 319 F. Supp 2d 5, 9 (D.D.C. 2004) (remanding the case where hearing officer did not address whether defendants violated IDEA); *Armstrong v. Dist. of Columbia*, 2005 WL 433448, at *3 (D.D.C.2005) (remanding case where hearing officer failed to explain the factual bases for his findings). To that extent, if these post-hearing matters are deemed appropriate for consideration now, the Court should first have the hearing officer review them, rather than the Court, considering their significance in the first instance.

---

[2] The results of that evaluation were negative-- no services were needed.

C. **Plaintiff presented no evidence before the hearing officer that the 2004 evaluations were inadequate or inappropriate. Nor do the 2004 evaluations themselves indicate that M.P.'s I.E.P. was inappropriate.**

Plaintiff claims that DCPS knew or should have know that M.P. was emotionally disturbed when the January 15, 2005 I.E.P. was developed and failed to provide him with services to address his behavior. PMSJ. at 13. However, there was no indication that M.P.'s behavior issues were because he was emotionally disturbed.

In the psycho-educational evaluation conducted on July 12, 2004,—the psychologists states, "Emotionally, he does not indicate any serious emotional problems." R. at 20. The Social History Report indicates that Ms. Peak reported that M.P. was a "generally well-behaved child." R. at 29. The recommendations in the social history report are that M.P. could benefit from "an educational environment that would allow him to receive plenty of attention and socio-emotional counseling." PMSJ at 30. However, it further states, "In addition, **Ms. Peak would benefit from seeking outside treatment for the family as a whole** to process the loss of two parents (death of their mother and abandonment/rejection of their father).(emphasis added)" R. at 30. Also, the psychologist[3] "requested that when M.P. is taken for his health checkup, Ms. Peak ask for him to be assessed for hyperactivity." R. at 33. Ms. Peak signed that she agreed with the contents of M.P.'s initial I.E.P on August 12, 2004. Record at 35. She also agreed with the initial placement at Malcolm X Elementary School. R. at 47. M.P.'s August 12, 2004 I.E.P Report Card , indicated that he had "mastered" some math goals and that "progress is being made by the student" on other goals. R. 48-49. In reading, the report was

similar—he had achieved or mastered some goals and was "making very good progress" on others. R. at 49-51.      The January 15, 2005 I.E.P. Report card showed similar progress in math and reading. R. at 52-53.

Both the general education and special education teachers reported that his behavior has improved. R. at 66, 91. The hearing officer made findings of fact with respect to the progress M.P. had made, citing plaintiff's exhibits and the testimony of both Ms. Gregory and Ms. Peak from the January 15, 2005 MDT Meeting. R. at 3-4.  The grandmother agreed with the January 15, 2005 by signing it. R. at 3, 57.   He noted that "the grandmother acknowledged that she stated the student is making overall improvement at the above January MDT Meeting." R. at 3-4.  the hearing officer also found that Ms. Peak lived across the street from the school but had never reported any problems to Ms. Gregory.

Plaintiff having offered no evidence that the 2004 evaluations or the I.E.P. were untimely or inappropriate, the Hearing Officer's findings of fact indicated that he surely concluded that DCPS met their burden of showing that the evaluations upon which the January 25, 2005 I.E.P. was based were timely and appropriate, and that the I.E.P. was appropriate.  R at 3-4.   Because plaintiff offered no evidence regarding the claim that M.P. should have been evaluated in 2002-2003, there would have been no basis upon which the hearing officer could have found in plaintiff's favor.

The hearing officer's findings of fact support a conclusion that the evaluations and previous I.E.P. were timely and appropriate. R. at 3-4.   This case is distinguishable from *Petway*, 2005 U.S. Dist. LEXIS 36226 (2005) and *Reid*, 401 F.3d 516, cited by Plaintiffs.  In Petway, the hearing officer

---

[3] Plaintiff represents that Ms. Peak asked DCPS to test M.P. for Attention Deficit Hyperactivity Disorder ("ADHD').

failed to analyze four out of five issues presented in the case before finding that plaintiff was not entitled to reimbursement for a unilateral placement. Finding that "the Record overwhelmingly supports the conclusion that Backus was not an n appropriate placement", the Court declined to remand the case to the hearing office and instead decided the case itself. Id. at 14.

In *Reid*, the Court fashioned an hour per day calculation for a compensatory education award without indicating why he chose that formula or what services should be offered. The case was remanded back to the hearing officer to determine compensatory instruction using "an informed and reasonable exercise of discretion regarding what services he needs to elevate him to the position he would have occupied absence the school district's failures." Id. at 531. Here, the hearing officer did not fail to make adequate findings of fact to support his conclusions. He overlooked making a specific statement of the legal analysis and conclusion to which he was clearly heading that DCPS had met its burden on the validity and timeliness of the evaluations and I.E.P. Plaintiff put on no testimony or other evidence to attack the validity or timeliness of the evaluations and the I.E.P. Indeed, the grandmother had signed the I.E.P. Based on this oversight, the Court should not substitute its judgment for that of the Hearing Officer. Even if the Court were to conclude that the hearing office failed to adequately address whether there was a denial of FAPE with respect to the evaluations, the appropriate remedy would be remand of the case back to the hearing officer for clarification. *See Goldstrom v. District of Columbia*, 319 F. Supp. 2d 5 (2004).

In short, the record here does not support a finding that DCPS failed to evaluate and to develop and implement an appropriate I.E.P. for M.P. either initially or on January 25, 2005.

II. **The Record Also Supports the Hearing Officer's Conclusion that Plaintiff's Counsel**

**Interfered with DCPS Process for Addressing the Grandparent's Concerns**

The record reflects that once the special education coordinator, Taiya Gregory, learned that Ms. Peak had concerns about M.P.'s progress, she took immediate steps to try and set up an MDT meeting.   Her efforts to set up this meeting and the efforts of Carolyn. Houck, plaintiff's counsel, to interfere with the meeting are well documented in the record.  R. at 96-105, 112-124; 131-143.

The Hearing Officer made detailed findings of fact and conclusions of law in support of his ruling that Ms. Houck had interfered with the MDT process preventing DCPS from using from having the opportunity to address Ms. Peak's concerns with respect to both evaluations and his placement before bringing administrative action.  This is not the first time that plaintiff's counsel has been fund more interested in promoting litigation than in trying to implement measures helpful to disabled student clients.  See, e.g. *Lesesne v. Dist. of Columbia*, Civ. No. 04-0620, July 26, 2005), slip op. at 7-10, aff'd. 447 F.3d. 828 (D.C. Cir. 2006).

The facts that DCPS was finally able to hold an MDT/IEP meeting in November, 2005 and that further evaluations were conducted in December, 2005 and January, 2006 from which an additional area of disability was added is not proof that DCPS knew or should have known that M.P. then met the criteria for emotionally disturbed in July 2004.

## CONCLUSION

Plaintiff has been unable to establish through the existing administrative record that was actually before the Hearing Officer that DCPS failed to timely evaluate M.P initially.  Nor did plaintiff offer any proof at the administrative hearing or now that the July evaluations upon which the January I.E.P. was based were untimely or inappropriate.   The record strongly supports the Hearing Officer's

9

findings of fact that co-counsel, Carolyn Houck, interfered with the MDT/IEP process and therefore prevented DCPS from reevaluating the minor child and subsequently proposing an appropriate placement.

The Hearing Officer's dismissal of plaintiff's claims was correct and appropriate. If further clarification is needed either on the findings of fact or the conclusions of law, the case should be remanded to the Hearing Officer. Accordingly, Plaintiff's Motion for Summary Judgment should be denied.

Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the
District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

**/s/ Edward P. Taptich**
EDWARD P. TAPTICH [#012914]
Chief, Equity Section II

**/s/ Carol E. Burroughs**
CAROL E. BURROUGHS [#415432]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6520
carol.burroughs@dc.gov

August 7, 2006