## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALICE PEAK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-1912 (ESH)** |
| ) | |
| **DISTRICT OF COLUMBIA,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Alice Peak, as grandmother and guardian of ten-year-old M.P., seeks review of

an administrative decision denying her request for relief from the District of Columbia Public

Schools ("DCPS") for alleged violations of the Individuals with Disabilities Education Act

("IDEA"), which requires states receiving federal financial assistance to identify, locate, and

evaluate children with disabilities and to ensure that a free appropriate public education

("FAPE") is made available to them. *See* 20 U.S.C. § 1412(a)(1)(A), (3)(A).[1]  The parties agree

that only plaintiff's claim for compensatory education for alleged IDEA violations between April

2003 and June 2005 remains at issue, and they have filed cross-motions for summary judgment.[2]

_____

[1]Although Congress amended the IDEA through the Individuals with Disabilities
Education Improvements Act of 2004 ("IDEIA"), which took effect on July 1, 2005, *see* Pub. L.
108-446, 118 Stat. 2647 (2004), the substantive changes to the statute are not at issue in this case.
For ease of reference, citations to the IDEA are to the statute as amended.

[2]This case was reassigned to the undersigned district judge on October 25, 2007.  Prior to
the reassignment, the parties filed a joint status report indicating that their cross-motions for
summary judgment remained ripe for decision and that certain subsequent developments with
respect to M.P.'s school placement had no effect on the status of the case.  (*See* Joint Status
Report filed Sept. 5, 2007 [Dkt. #34].)

As set forth herein, the Court finds that the hearing officer erred in denying this claim based on counsel's refusal to meet with DCPS to discuss plaintiff's concerns regarding M.P. prior to requesting a due process hearing. Because of this ruling regarding counsel, the hearing officer did not make findings as to whether DCPS in fact violated the IDEA during the relevant time period. As a result, the Court will remand the case so that the hearing officer can determine whether there were any IDEA violations and, if so, what relief in terms of compensatory education plaintiff is entitled to.

## BACKGROUND

M.P. is a ten-year-old boy who until 2006 attended Malcolm X Elementary School in the DCPS system. (*See* Pl.'s Ex. 14.) After receiving a multi-disciplinary team ("MDT") referral in February 2004, M.P. was evaluated for special education services in July 2004, when a psychoeducational evaluation, a speech and language evaluation, and a social history were conducted. (Pl.'s Statement of Material Facts as to Which There Is No Genuine Issue ["Pl.'s Statement"] ¶¶ 10, 11; Def.'s Statement of Material Facts ["Def.'s Statement"] ¶ 2; *see also* R.31 (MDT meeting notes listing an "MDT referral date" of February 5, 2004).) DCPS thereafter convened an MDT meeting on August 12, 2004, at which M.P. was determined to be eligible for special education as a student with a learning disability, and an initial Individualized Education Program ("IEP")[3] was developed for him. (R.31-47.) The IEP provided for fifteen hours per

---

[3]The IEP is "the 'primary vehicle' for implementing the [IDEA]." *Lesesne v. District of Columbia*, 447 F.3d 828, 830 (D.C. Cir. 2006) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). It is "'[p]repared at meetings between a representative of the local school district, the child's teacher, the parents or guardians, and, whenever appropriate, the disabled child,' . . . [and] [i]t 'sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives.'" *Id.*

week of specialized instruction in math, reading, and written expression and one hour per week of speech therapy to begin in September 2004 and concluded that Malcolm X was the appropriate location for these services.  (R.34-47; Pl.'s Statement ¶ 13.)  Plaintiff participated in the MDT meeting and signed the resulting IEP, indicating her agreement with its contents.  (R.35.)

On January 25, 2005, DCPS convened a second MDT meeting at which M.P.'s progress was reviewed and a revised IEP was developed.  (R.57-67; Def.'s Statement ¶ 4.)  Plaintiff again participated in the meeting, reporting overall improvement in M.P.'s school performance but also expressing concerns about M.P. not bringing homework home.  (R.65-66; Def.'s Statement ¶ 4.)  Plaintiff also signed the revised IEP for M.P., which continued his placement at Malcolm X and again provided for fifteen hours per week of specialized instruction and one hour per week of speech therapy.  (R.57, 63, 65.)

In June 2005, after learning that plaintiff had retained counsel and that she wanted a meeting, DCPS sought to convene a third MDT meeting to discuss her concerns about M.P. (Def.'s Statement ¶ 6; R.104-05, 121-23.)  On June 10, 2005, Taiya Gregory, the special education coordinator at Malcolm X, faxed a letter of invitation to plaintiff's counsel, Carolyn Houck, indicating that the purpose of the meeting was to develop a student evaluation plan and proposing three possible dates.  (R.77-80.)  The invitation was accompanied by a letter indicating that Gregory had spoken to plaintiff, who was available on June 20, 2005, one of three proposed dates, and that Gregory would therefore confirm Houck's attendance for a meeting on the 20th at 9:30 a.m., unless she heard otherwise from Houck by June 15.  (R.78.)  On June 20, plaintiff appeared for the MDT meeting, but her counsel did not.  (Def.'s Statement ¶ 8.)  Although the details of the call are disputed (*compare id.*, *with* Pl.'s Statement of Facts in Dispute ¶ 8),

3

Gregory did speak with Houck or someone from her office by phone on the morning of the 20th and was advised that the meeting would not go forward. (R.100-103; 163-64.)

Nine days later, plaintiff's counsel filed a request for a due process hearing, alleging that DCPS had failed to sufficiently evaluate M.P. for disabilities, to develop and implement an adequate IEP for him, and to provide him with an appropriate placement for the 2005-2006 school year and earlier years. (R.8-11.) The request sought a private school placement for M.P. as well as additional evaluations, development of an adequate IEP, and compensatory education. (R.11.) Following a due process hearing on August 23, 2005, the hearing officer issued a ruling on August 30, denying the request for relief and dismissing the case based on plaintiff's counsel's "troubling conduct of holding out for a hearing instead of going through the MDT educational review process" - - conduct that "further delays the educational process to the detriment of the student and fails to give the school district an opportunity to rectify the situation." (R.5-6.)

On September 28, 2005, the plaintiff filed a complaint in this Court seeking the same injunctive remedies she had sought in the administrative hearing. (Compl. at 4-5.) After the complaint was filed, DCPS performed the necessary evaluations of M.P., revised his IEP, and changed his school placement. (Pl.'s Mem. at 1-2; Def.'s Mem. at 8-9.) Accordingly, the only remaining claim is one for compensatory education for the period from April 2003 to June 2005, relating to plaintiff's contention that DCPS denied M.P. a FAPE, first by failing to timely evaluate him for special education services and, later, by failing to perform certain necessary evaluations, to develop an appropriate IEP and to provide him with an appropriate school placement. (*See* Pl.'s Mem. at 2, 12-18.)

## ANALYSIS

In reviewing an administrative determination under the IDEA, the district court "(i) shall review the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(c). The reviewing court must give "due weight" to the hearing officer's determinations, *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982), but less deference is appropriate than is conventional in administrative proceedings. *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988). The party challenging the administrative decision bears "the burden of persuading the court that the hearing officer was wrong, and . . . a court upsetting the officer's decision must at least explain its basis for doing so." *Id.*

The hearing officer concluded that plaintiff's counsel's insistence on proceeding directly to an administrative hearing, rather than participating in the MDT meeting that DCPS had sought to convene, justified dismissal of plaintiff's claims in their entirety. In reaching this conclusion, he relied primarily on *LeSesne v. District of Columbia*, No. 04-0620, 2005 WL 3276205, at *7 (D.D.C. July 26, 2005), *aff'd*, 447 F.3d 828 (D.C. Cir. 2006). In that case, after the need for an IEP had been identified but before an IEP/MDT meeting had been convened to develop one, counsel for the parent contacted DCPS regarding the need for a meeting and then immediately filed a request for a due process hearing. *Id.* at *2-3. DCPS thereafter proposed three dates for a meeting, which counsel rejected. *Id.* at *4. When DCPS proposed three more dates, counsel did not respond in advance of the administrative hearing, and her statements at the hearing revealed

5

that she did so "primarily in order to win attorney's fees allotted by the statute."[4] *Id.* Following the hearing, the hearing officer denied all relief and dismissed the case, finding that the proceeding had been mooted because DCPS had made reasonable efforts to schedule an IEP/MDT meeting before the hearing, but plaintiff's counsel had frustrated those efforts. *Id.* The district court upheld the hearing officer's decision, agreeing that "the due process meeting was mooted out because (1) the DCPS was already attempting to set up the very type of meeting Plaintiff was asking the [hearing officer] to order, and (2) Plaintiff - - spurred on by a quest for attorney's fees - - was actively avoiding that meeting and postponing any progress until an Administrative Hearing on the matter." *Id.* at *7.

Unlike *LeSesne*, where the focus was on the plaintiff's efforts to obtain prospective relief (an initial IEP and an appropriate school placement) aimed at ensuring that the student would "receive[] *tomorrow* the education required by IDEA," *Branham v. District of Columbia*, 427 F.3d 7, 11 (D.C. Cir. 2005), the compensatory education remedy at issue here is retrospective relief designed to compensate M.P. for past IDEA violations that allegedly occurred in the two years preceding the due process hearing. While plaintiff's counsel's refusal to participate in an MDT meeting prior to the hearing in this case may have frustrated DCPS's efforts to address plaintiff's concerns about M.P.'s placement and IEP on a going forward basis (as was the case in *LeSesne*), it is far from clear that the proposed meeting would have provided an opportunity for resolution of plaintiff's request for compensatory education in the absence of an administrative or judicial finding that M.P. had in fact been denied a FAPE during the April 2003 to June 2005

---

[4]Although the IDEA permits awards of attorney's fees, fees "may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action . . . ." 20 U.S.C. § 1415(i)(3)(B)(i), (D)(ii).

time frame. *Cf. Reid v. District of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005) ("Under the theory of 'compensatory education,' courts and hearing officers may award 'educational services . . . to be provided prospectively to compensate for a past deficient program."). Accordingly, the availability of a pre-hearing MDT meeting would not have mooted the hearing as to plaintiff's compensatory education claim.[5]

The hearing officer also cited *Combs v. School Board of Rockingham County*, 15 F.3d 357 (4th Cir. 1994), and *Sanger v. Montgomery County*, 916 F. Supp. 518 (D. Md. 1996). Those cases likewise do not support dismissal of plaintiff's compensatory education claim. *Combs* involved a request for attorney's fees by a plaintiff whose administrative challenge to the appropriateness of his IEP was denied, but whose IEP was later modified by the school district in ways consistent with certain of his demands. 15 F.3d at 359. The court denied the request, finding that plaintiff had not shown that any of the changes that the school district ultimately made were the result of his efforts in the administrative process. *Id.* at 363. In so holding, the court faulted the plaintiff for not having provided the school district with notice and an opportunity to rectify the situation before bringing an administrative action, noting that "while [plaintiff] is free to resort to administrative judicial action, he cannot expect to recover fees and costs when his efforts contributed nothing to the final resolution of a problem that could have been achieved without resort to administrative or legal process." *Id.* at 364.

Citing the court's admonition in *Combs* that the "school district should have been given

---

[5]Although the plaintiff's due process hearing request in *LeSesne* also included a request for compensatory education, 2005 WL 3276205, at *3, the court did not address this aspect of the plaintiff's claim, instead construing the question for the hearing as "whether to order [an IEP] to be created." *Id.* at *1.

notice and the opportunity to rectify the situation before [the plaintiff] brought an administrative action and subsequent lawsuit," *id.*, the court in *Sanger* rejected an IDEA claim based on a school district's delay in developing a new IEP for a student upon finding that any delay was solely attributable to the plaintiffs, who with their counsel had "blocked every effort by [the school district] to develop a new [IEP]," including canceling IEP meetings, unilaterally withdrawing the student from school, and then seeking a due process hearing. *Sanger*, 916 F. Supp. at 527. The court in *Sanger* thus held that any failure by the school district to comply strictly with the IDEA's procedures would be excused where the failure was due to plaintiffs' refusal to cooperate in the IEP process. Unlike *Sanger*, however, the parental noncooperation cited by the hearing officer in this case did not occur until June 2005, after the alleged IDEA violations that form the basis for plaintiff's compensatory education claim were complete. Although the Court does not condone the refusal of plaintiff's counsel to participate in an MDT meeting before seeking a due process hearing, it cannot agree that the refusal can serve in this case as the basis for denying plaintiff's claim for compensatory education for IDEA violations that preceded the June 2005 meeting.

Having resolved the case without reaching the merits, the hearing officer did not make any findings as to whether DCPS in fact failed to provide M.P. a FAPE between April 2003 and June 2005.[6] (*See* R.2-6.) Because compensatory education is a remedy for past deficiencies in a student's educational program, however, such a finding is a necessary prerequisite to a

---

[6]Although defendant suggests that it is clear from the hearing officer's findings of fact, which include findings regarding progress that plaintiff and others reported observing in M.P. at the January 2005 MDT/IEP meeting, that there was no denial of FAPE (Def.'s Mem. at 9-10, 13-14), it concedes that the hearing officer failed to make any explicit findings on the subject. (*Id.* at 14.)

compensatory education award. *Reid*, 401 F.3d at 523 ("'[C]ompensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student.'") (quoting *G. ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 309 (4th Cir. 2003)).  Accordingly, the Court will remand the case to the hearing officer to determine in the first instance whether M.P. was denied a FAPE during the relevant time period (or any portion thereof) and, if so, to address plaintiff's request for compensatory education. *See Goldstrom v. District of Columbia*, 319 F. Supp. 2d 5, 9 (D.D.C. 2004) (remanding case where hearing officer made no findings as to whether defendant denied plaintiff a FAPE but proceeded to the question of plaintiff's entitlement to reimbursement for a private placement, for which denial of a FAPE was a prerequisite).

## CONCLUSION

For the reasons set forth herein, plaintiff's motion for summary judgment will be granted in part and denied in part and defendant's motion for summary judgment will be denied.  This matter will be remanded to the hearing officer to determine whether M.P. was denied a FAPE between April 2003 and June 2005 (or during any portion of that time period) and to address plaintiff's request for compensatory education for such violations, if any.


_____
             /s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: November 23, 2007